---

(Preble County, O., Court of Common Pleas)
THE STATE OF OHIO ex rel. F. S. MONNETT, ATTORNEY GENERAL, v. THE BOARD OF COUNTY COMMISSIONERS OF PREBLE COUNTY.

*Sec. 917 of the Revised Statute, construed*—

The financial transactions of the Board of County Commissioner, under sec. 917, of the Rev. Stat., are the official acts of the board in the receipt or disbursement of the public moneys; a detailed report of such financial transactions, as required by said section, is one which must show the date, the amount, from what source received, or to whom, and for what, each payment of money is made; and the county commissioners have no discretion under said section as to what said report shall contain.

*The Attorney General a proper person to bring the suit*—

In an action to compel the county commissioners to make a detailed report in writing of their financial transactions, as required under sec. 917, the state being the party beneficially interested, the Attorney General is a proper officer to prosecute the action.

---

FISHER, J.

This is a proceeding in mandamus. The relator avers in his petition, that sec. 917 of

the Rev. Stats. of the state of Ohio, provides and requires, that the county commissioners, annually, on or before the third Monday in September, shall make a detailed report, in writing, to the court of common pleas of the county, of their financial transactions during the year next preceding the time of making such report; that on September 2, 1896, the Board of County Commissioners of Preble county, made to said Court of Common Pleas, a report in writing, purporting to be a report of their financial transactions for the year ending August 31, 1896; that said pretended report is not the detailed report required by sec. 917, and the same does not even purport to give, in detail, the expenditures from the various funds, but only gives total amounts expended for various purposes. and does not give the source from which the revenues were received; that said Board has neglected and failed to comply with the provisions, and requirements of said section of the Revised Statutes as to making a detailed report to the court of common pleas of their financial transactions for the year ending August 31, 1896, and prays that a writ of mandamus issue commanding said board of county commissioners to make to the court a detailed report in writing of their financial transactions for the year ending August 31, 1896, as required by law.

A copy of the report filed by the commissioners is filed with the petition, marked "Exhibit A."

To this petition the board of county commissioners have filed a demurrer, and maintain, first, that the petition does not state facts sufficient to constitute a cause of action; and second, that the Attorney General is not the proper person to bring the suit.

The questions raised by the demurrer involve the construction of secs. 917 and 210 of the Rev. Stats.

Section 917, provides that "the county commissioners, annually, on or before the third Monday in September, shall make a detailed report in writing, to the court of common pleas of the county, of their financial transactions during the year next preceding the time of making such report. * * *. The court in the case of The State of Ohio ex rel. Gould & Harkrider v. The Commissioners, had occasion to somewhat carefully examine into the intention of the legislature as expressed in this section, and although in that case it did not become necessary for the court to express its opinion as to the meaning of the section, it has found no reason for a change of view on re-examination.

An examination into the legislation upon this subject, affords much aid in coming to a correct understanding as to what is meant by that portion of sec. 917, involved in this suit.

The act establishing Boards of County Commissioners was passed February 13, 1804. Sec. 44 of that act provided that the commissioners of the several counties shall,

at the first session of the associate judges next succeeding their annual meeting yearly, exhibit and lay before said judges a general statement of the receipts and expenditures of the respective counties and a particular account of all moneys by them assessed and collected, as also an account to whom and for what use or uses the same money and every part and parcel thereof was paid out again, with the proper vouchers, if required by said judges; which exhibit shall be filed and kept among the records of said associate judges; and a copy of which shall be published in a newspaper printed in the county, or by affixing the same on the court house door, during the next succeeding term of the court of common pleas. 1 Chase, 411.

By the act of January 15, 1810, sec. 12, vouchers, and the publication in a newspaper, if one was printed in the county, were required in all cases. 1 Chase, 650.

This remained the law until 1824, when, by the act of February 25, of that year, sec. 6, it was provided that the commissioners at their general session, should "examine and compare the accounts and vouchers of the county auditor and treasurer, and cause the auditor to publish a statement of the receipts and expenditures of the current year." 2 Chase, 337.

By the act of March 5, 1831. 3 Chase, 1799, the commissioners were required to "direct the auditor to publish an exhibit of the receipts and expenditures of the past year." No material change was made in this law, except that the time was changed to the September session, and it now stands upon our statutes, as sec. 852.

March 8, 1856, the legislature passed an act, 4 Curwen, 2802, "further to prescribe the duties of county commissioners;" and in that act it is provided that, "it shall be the duty of the county commissioners, annually, on the first Monday in March, to make a detailed report in writing, to the court of common pleas of the county, of their financial transactions during the next year preceding the time of making such report. giving an accurate statement of the financial affairs of the county, which shall be printed at the expense of the county, as directed by the court to whom the same is made."

This act March 8, 1856, was modified and ameneded, as will appear in 4 Curwen, 2868.

1 Sayler, 103, Chap. 93—58 O. L., 84.
2 Sayler, 1041, Chap. 933—63 O. L., 128.
3 Sayler, 2225, Chap. 1727—69 O. L., 43.
4 Sayler, 3282. Chap. 2809—72 O. L., 203.
4 Sayler, 3520, Chap. 309--73 O. L., 46.

The law was further amended April 8, 1876, 73 O L., 141, and with the exception of the amendment passed April, 1896, is now the law as declared under sec. 917, of the Rev. Stats.

It will be observed that the word "financial" in connection with the word "transactions" is for the first time used in the act of April 8, 1876. Before that time, the word "official" was used in connection with the word "transactions."

From this summary, it will be seen that from 1856, these two sections, 852 and 917, of the Rev. Stats., were in force in substance as they now are. Section 852 requiring, that at the September session the commissioners shall examine and compare the accounts and vouchers of the county auditor and treasurer, count the funds in the treasury, and direct the auditor to publish an exhibit of the receipts and expenditures for the last year; sec. 917, requiring the county commissioners to make a detailed report of all their financial transactions during the year next preceding the time of making the report.

It would appear, therefore, that if the requirements of sec. 917, would be satisfied by the performance of the requirements of sec. 852, there would be no necessity of 917 imposing the "additional duty."

Under sec. 852, a statement of the aggregate money received from the different sources, and the purposes for which paid out; in short, a summary of the receipts and expenditures, would satisfy the requirement Under sec. 917, more is required.

The legislature has declared the purpose of the act of March 8, 1856, to be "To further prescribe the duties of the county commissioners," and to that end it is declared, "the county commissioners, annually, on the third Monday in September, shall make a detailed report, in writing, to the court of common pleas of the county, of their financial transactions during the next year preceding the time of making such report."

The primary object of the law appears to be to inform the tax payers of the county what has been done by the commissioners with the public funds under their control, by requiring them to specifically state each money transaction in such a detailed manner as to afford the tax-payer information for what purpose the money was expended, the amount expended, to whom it was paid, and when.

To be a "financial transaction" of the commissioners, it must be one in which they, control and direct; hence, the disbursement of a fund by other boards, and over which disbursement the commissioners have no control, such transactions with the public fund would not be, within the meaning of the statute, the financial transactions of the commissioners. For example sec. 963, of the Rev. Stats., provides that the commissioners shall set apart out of the poor fund, not exceeding at any one time, $200.00, at the request of the infirmary directors, and upon their order, paid to the superintendent. The setting apart of this fund of $200.00, and the payment of it to the superintendent, is a financial transaction of the commissioners, but the expending of the money by him, as needed, under the direction of the Board of Infirmary Directors, is not a financial transaction of the commissioners, although the commissioners under sec. 967, examine the detailed report of the infirmary directors required to be made on the first Mondays of March and September in each year, and pass

upon the correctness of the same. This would be an official transaction, and should not form a part of the report of the financial transactions of the commissioners. The same is true of the expenditures under sesc. 964 and 965, and also of the expenditures of the Board of Directors of the Children's Home, and of all other boards where the expenditures are under their exclusive direction. The setting apart of the fund and the payment to the different boards, is the financial transaction that should find place in the report.

To detail, is to relate the particulars minutely and distinctly. Hence, to make a detailed report of a moneyed transaction, the time of receipt or payment, the amount of the receipt or payment, from whom received, or to whom paid and for what, should be stated. There is nothing in the history of the legislation upon this subject which modifies or limits the meaning of the word "detail" as here given This is the only construction which establishes a fixed course of action. If to report in detail, as used in sec. 917, leaves a discretion to the commissioners as to the essential particulars, and manner in which the financial transactions shall be stated, then there would be no fixed rule by which this duty could be determined, and the whole matter would rest upon the personal views of the commissioners; and if once it is admitted that to detail does not mean to particularize, but to summarize, who can say where the summarizing shall leave off? The court is of the opinion, that this section of the statute leaves no discretion with the commissioners as to what this report shall contain.

The court is aware that a widely different practice prevails throughout the state in reference to these reports. But a careful consideration of the law, leads it to the conclusion that a detailed report of the financial transactions of the commissioners is one in which the transactions shall be separately stated and particularly set out.

The court fully appreciates the argument that to make such a report as would comply with the law would involve much time and expense; that on account of the extensive growth of the business of the county and the vast and increasing number of distinct financial transactions of the commissioners, compliance with the law in some cases would be impracticable, and the benefits to be derived therefrom, swallowed up in the enormous cost and expenditure of the county's money in carrying out these provisions in relation to printing the report; that a better, more satisfactory and a much more economical method of informing the tax payer of the doings of the commissioners, could be adopted, the court has no doubt. But the court is not here to legislate. It cannot read into the law provisions necessary to keep abreast of the times and necessary to an economical expenditure of the people's money. Its business is to interpret and enforce the law as it finds it upon

the statute book. So long as the law remains as it is, it should be complied with.

The court is of the opinion, that the report filed by the commissioners of their financial transactions, as required by sec. 917, is not in compliance with the section.

This being true, was the Attorney General a proper person to bring this suit?

The court held in the case of The State of Ohio ex rel. Gould & Harkrider v. The County Commissioners, that the duty imposed upon the commissioners under sec. 917, was purely a public duty, and being a purely public duty, a suit to compel the commissioners to perform that duty by a private citizen, could not be maintained.

State of Ohio ex rel. Flowers v. The Board of Education, 35 Ohio St., 368-384; State of Ohio ex rel. Charles T. Clark v. John Murphy, 3 C. C., 332-336.

The court in the last case, hold that under sec. 6744, of the Rev. Stats., "the party beneficially interested," where the duty sought to be enforced is a purely public duty, is the state, and a suit invoking the aid of mandamus to compel the performance of the duty must be prosecuted in the name of some public officer charged with duty of seeing that the laws are executed.

The Attorney General of the State, as well as the Prosecuting Attorney of the county, are such officers charged with the duty of seeing that the laws of the state are executed.

Under sec. 210, the Attorney General is empowered to prosecute any action, information, or other suit, in behalf of the state, or in which the state is interested, in any court of appropriate jurisdiction, in any county in which the defendant, or any of the defendants reside, or are found It having been determined that the state is the party beneficially interested in this suit, the Attorney General, in the opinion of the court, was a proper officer to prosecute the action in the name of the state.

The court is sustained in this view of the case by the numerous reported cases where mandamus proceedings are prosecuted in the name of the Attorney General, where the public, or a particular portion of the public, have been interested. This long continued practice, acquiesced in both by the bar and the courts, is high authority that this is the law.

The demurrer must therefore be overruled, and the defendant not desiring to further plead. a peremptory writ is awarded requiring the commissioners to forthwith file with the court a detailed report of their financial transactions in accordance with sec. 917.